1   BROWNE WOODS GEORGE LLP
2   Michael A. Bowse (No. 189659)
    mbowse@bwgfirm.com
    Amanda L. Morgan (No. 246277)
3   amorgan@bwgfirm.com
    2121 Avenue of the Stars, Suite 2400
4   Los Angeles, California  90067
    Tel 310.274.7100 -- Fax 310.275.5697
5
    Attorneys for Defendants
6   CHRISTIAN AUDIGIER, INC.;
    NERVOUS TATTOO, INC.,
7   SHOP ON STAGE, INC., and
    CHRISTIAN AUDIGIER, an individual
8

9

10                UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13  BUCKLEY H. CRISPIN, an Individual, | Case No. CV09-9509-ABC(JEMx) Assigned to Hon. Audrey B. Collins |
| 14 | |
| 15         Plaintiff, | **REPLY TO PLAINTIFF BUCKLEY H. CRISPIN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| 16      v. | |
| 17  CHRISTIAN AUDIGIER, INC., a California Corporation; NERVOUS | |
| 18  TATTOO, INC., a California Corporation; SHOP ON STAGE, | Date:        June 21, 2010 |
| 19  INC., a California Corporation; CHRISTIAN AUDIGIER, an | Time:        10:00 a.m. Ctrm:        780, Roybal Building |
| 20  Individual; 3A WATCH, LLC, a California Limited Liability | |
| 21  Company; RADIANCE JEWELRY, INC., a California Corporation; | Complaint Filed: December 29, 2009 |
| 22  CHROMEBONES, a business entity of unknown form, REVOLUTION | |
| 23  EYEWEAR, INC., a California Corporation; CA BEVERAGES, | |
| 24  LLC, a California Limited Liability Company; CALIFORNIA BAG, | |
| 25  LLC, a California Limited Liability Company; JR 93 INC, a California | |
| 26  corporation; NEW WAVE FRAGRANCES, a business entity of | |
| 27  unknown form; LE MARAIS LLC, a California Limited Liability | |
| 28  Company; MOOD SIGNATURES | |

247587_2.DOC

REPLY TO PLAINTIFF BUCKLEY H. CRISPIN'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LLC, a California Limited Liability
Company; HTP ENTERPRISE
TRADING, a California company of
unknown form; SEA AND SURF,
LLC, a California Limited Liability
Company; TATTOO DRINK, INC.,
a California corporation; TATTOO
AIR FRESH, INC, a California
corporation;  and DOES 1-10,
inclusive,

                    Defendants.

REPLY TO PLAINTIFF BUCKLEY H. CRISPIN'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FIRST AMENDED COMPLAINT

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3  I.      INTRODUCTION ...................................................................................1

4  II.     STATEMENT OF FACTS.......................................................................2

   III.    ARGUMENT ..........................................................................................4

5          A.      Plaintiff Fails to State a Claim for Copyright Infringement, And
6                  As A Result Has Not Created Federal Question Jurisdiction................4

7                  1.      Plaintiff has not alleged a claim arising under the
                           Copyright Act. ....................................................................5

8                  2.      Any alleged requirement that Defendants display
                           Plaintiff's "seal" arises out of contract law not copyright
9                          law. .....................................................................................9

10                 3.      Unauthorized sub-licensing does not create a claim for
                           copyright infringement. ....................................................11

11                 4.      Plaintiff fails to plead how or when Defendants infringed
                           his copyrights ...................................................................13

12         B.      Plaintiff Fails to State a Claim for Breach of Contract.......................14

13         C.      Plaintiff Fails to State a Claim for Breach of the Implied
                   Covenant of Good Faith and Fair Dealing..........................................15

14         D.      Plaintiff Fails to State a Claim Against Defendants Nervous
                   Tattoo and Shop on Stage ...................................................................17

15 IV.     CONCLUSION.....................................................................................18

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY TO PLAINTIFF BUCKLEY H. CRISPIN'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FIRST AMENDED COMPLAINT

1

## CASES

2

3    *Agosta v. Astor*,
        120 Cal. App. 4th 596 (2004) ...................................................................15

4    *ARCO Envtl. Remediation, L.L.C. v. Dept. of Health and Envtl.*
        *Quality of the State of Montana*,
5        213 F.3d 1108 (9th Cir. 2000) .....................................................................6

6    *Bell Atlantic Corp. v. Twombly*,
        550 U.S. 544 (2007) ...................................................................................13

7    *Bionghi v. Metropolitan Water District of Southern California*,
        70 Cal. App. 4th 1358 (1999) ...............................................................15, 16

8    *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*,
        685 F. Supp. 2d 1094 (E.D. Cal. 2010)......................................................14
9

10   *Careau & Co. v. Security Pacific Business Credit, Inc.*,
        222 Cal. App. 3d 1371 (1990).....................................................................16

11   *De Jesus v. Sears, Roebuck & Co.*,
        87 F.3d 65 (2d Cir.1996) ............................................................................13

12   *Eastern Broadcasting Am. Corp. v. Universal Video, Inc.*
        No. 04 Civ. 5654 2006 U.S. Dist. LEXIS 17032, 2006 WL 767871,
13       at *2 (E.D.N.Y. Mar. 24, 2006).....................................................................7

14   *Foad Consulting Group, Inc. v. Azzalino*,
        270 F.3d 821 (9th Cir. 2001) ..................................................................6, 11

15   *Franklin v. Cannon Films, Inc.*,
        654 F. Supp. 133 (C.D. Cal. 1987).................................................6, 8, 9, 12

16   *Gee v. CBS, Inc.*,
        471 F. Supp. 600 (E.D. Pa. 1979),
17       *aff'd*, 612 F.2d 572 (3rd Cir. 1979) ........................................................5, 13

18   *Harrell v. Van Der Plas*,
        2009 U.S. Dist. LEXIS 104828 (S.D.N.Y. Nov. 9. 2009)............................7

19   *Harris v. Emus Records Corp.*,
        734 F.2d 1329 (9th Cir. 1984) ....................................................................11
20

21   *Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.*,
        665 F. Supp. 2d 239 (S.D.N.Y. 2009).........................................................17

22   *Huebbe v. Oklahoma Casting Co.*,
        663 F. Supp. 2d 1196 (W.D. Okla. 2009) .....................................................8

23   *In re Verisign, Inc., Derivative Litig.*,
        531 F. Supp. 2d 1173 (N.D. Cal. 2007) ......................................................14

24   *Jacobson v. Katzer*,
        535 F.3d 1373 (Fed. Cir. 2008) ..............................................................8, 10
25

26   *Kelly v. L.L. Cool J.*,
        145 F.R.D. 32 (S.D. N.Y. 1992),
        *aff'd*, 23 F.3d 398 (2d Cir. 1994) ...........................................................5, 13

27   *Kipperman v. Dixson* (In re Diego's Inc.),
28       88 F.3d 775 (9th Cir. 1996) ........................................................................11

REPLY TO PLAINTIFF BUCKLEY H. CRISPIN'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FIRST AMENDED COMPLAINT

*Latimer v. Roaring Toyz, Inc.*,
  __F.3d __, 2010 WL 1253090 (11th Cir. 2010)................................................11

*LGS Architects, Inc. v. Concordia Homes of Nevada*,
  434 F.3d 1150 (9th Cir. 2006) ..............................................................7, 10

*Lulirama Ltd., Inc. v. Access Broadcast Svcs., Inc.*,
  128 F.3d 872 (5th Cir. 1997) ...........................................................................11

*Marshall v. New Kids on the Block Partnership*,
  780 F. Supp. 1005 (S.D.N.Y. 1991).................................................................7

*Marvullo v. Gruner & Jahr*,
  105 F. Supp. 2d 225 (S.D.N.Y. 2000)..........................................................13

*MDY Indus, LLC v. Blizzard Entm't, Inc.*,
  2008 U.S. Dist. LEXIS 53988 (D. Ariz. July 14, 2008) ...........................10

*N. County Commc'ns Corp. v. Verizon Global Networks, Inc.*,
  685 F. Supp. 2d 1112 (S.D. Cal. 2010) ..........................................................14

*Netbula, LLC v. Storage Tech. Corp.*,
  2008 U.S. Dist. LEXIS 4119
  (N.D. Cal. Jan 17, 2008) .....................................................................................10

*Pahl v. Commissioner*,
  150 F.3d 1124 (9th Cir. 1998) ...........................................................................10

*Parrish v. National Football League Players Ass'n*,
  534 F. Supp. 2d 1081 .............................................................................................14

*Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.*,
  307 F.3d 944 (9th Cir. 2002) ..............................................................................16

*Racine & Laramie, Ltd. V. Dept. of Parks and Recreation*,
  11 Cal. App. 4th 1026 (1992) ............................................................................15

*Resnick v. Copyright Clearance Ctr., Inc.*,
  422 F. Supp. 2d 252 (D. Mass. 2006) .............................................................12

*Rommel v. Laffey*,
  194 F.R.D. 441 (N.D.N.Y. 2000) .....................................................................14

*S.O.S., Inc. v. Payday, Inc.*,
  886 F.2d 1081 (9th Cir. 1989) ...........................................................................11

*Saturday Evening Post Co. v. Rumbleseat Press, Inc.*,
  816 F.2d 1191 (7th Cir. 1987) .............................................................................6

*Scholastic Entm't, Inc. v. Fox Entm't Group, Inc.*,
  336 F.3d 982 (9th Cir. 2003) ...........................................................................5, 6

*Stepdesign, Inc. v. Research Media, Inc.*,
  442 F. Supp. 32 (S.D.N.Y. 1977)......................................................................10

*Stewart v. Mortgage Elec. Registration Sys., Inc.*,
  No. CV. 09-688-PK, 2010 WL 1054384, *7 (D. Or. Feb. 18, 2010) ...............17

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*,
  24 F.3d 1088 (9th Cir. 1994) ..............................................................................12

*Sun Microsystems Inc. v. Microsoft Corp.*,
  188 F.3d 1115 (9th Cir. 2003).........................................................................8, 10

*T.B. Harms  Co. v. Eliscu,*
    339 F. 2d at 823 (2d Cir. 1964) ............................................................6

*Tilbury Constructors, Inc. v. State Compensation Ins. Fund,*
    137 Cal. App. 4th 466 (2006) .............................................................16

*Topolos v. Caldeway,*
    698 F.2d 991 (9th Cir. 1983) ..............................................................5

*UMG Recordings, Inc. v. Disco Azteca Distrib., Inc.,*
    446 F. Supp. 2d 1164 (E.D. Cal. 2006) ...............................................9

*Venegas-Hernandez v. Asociacion De Compositores, Editores De*
    *Musica Latinoamericana.,*
    424 F.3d 50 (1st Cir. 2005) ...............................................................12

*Vestron v. Home Box Office,*
    839 F.2d 1380 (9th Cir. 1988) ...........................................................8

*W. Emulsions, Inc. v. BASF Corp.,*
    No. CV 05-5246 CBM (SSx), 2006 WL 4599673, *1 (C.D. Cal.
    Apr. 28, 2006) ...................................................................................14

*Wolf v. Walt Disney Pictures and Television,*
    162 Cal. App. 4th 1107 (2008) ..........................................................15

*Wolfe v. United Artists Corp.,*
    583 F. Supp. 52 (E.D. Pa. 1983) .........................................................9

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure Official Form 3, 12 ..............................14

**RULES**

Federal Rule of Civil Procedure 12(b)(1) .................................................4

Federal Rule of Civil Procedure 12(b)(6) .................................. 1, 5, 13, 15

Federal Rule of Civil Procedure 8 ............................................ 2, 13, 17

REPLY TO PLAINTIFF BUCKLEY H. CRISPIN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1

## I.      **INTRODUCTION**

2          Plaintiff Buckley Crispin ("Plaintiff") has attempted to leverage what is

3    principally a contract dispute into a copyright infringement action.  Rather than the

4    proverbial wolf in sheep's clothing, here we have a sheep in wolf's clothing.

5    Plaintiff's claims, which focus on disputes over the terms and operation of the

6    parties' oral licensing agreement, do not have the teeth of a copyright action.

7    Instead, Plaintiff merely raises questions arising under state contract law.

8    Accordingly, Plaintiff's allegations stop short of stating a claim for copyright

9    infringement and are also insufficient to confer federal question jurisdiction.  Since

10   Plaintiff has pled no other basis for jurisdiction, the Court should dismiss this action

11   for lack of subject matter jurisdiction.

12         Alternatively, Plaintiff's copyright infringement, breach of contract and

13   breach of the implied covenant claims should be dismissed for failure to state a

14   claim upon which relief can be granted under Rule 12(b)(6).  First, Plaintiff has

15   failed to allege infringing acts by defendants Christian Audigier, Christian

16   Audigier, Inc., Nervous Tattoo, Inc. and Shop on Stage, Inc. (collectively

17   "Defendants") to state a claim for copyright infringement.  Broad, conclusory

18   allegations that a copyright violation has occurred are insufficient to state a claim.

19   Plaintiff must allege, and Defendants are entitled to know, the specific infringing

20   acts in which Defendants purportedly engaged.  Plaintiff's First Amended

21   Complaint ("FAC") is utterly devoid of such allegations.

22         Second, Plaintiff has not alleged sufficient facts to state a claim for breach of

23   contract.  In particular, Plaintiff is required (but failed) to plead the essential terms

24   of the oral contract on which he purports to sue, including:  pricing, duration,

25   description, timing of purchases, quantity of artwork, the scope of rights being

26   licensed, the duration of these rights, or conditions under which rights were

27   conferred, among other essential terms of the contract.  Indeed, rather than plead

28   what the contract's terms were, Plaintiff has focused his pleading on what the

247587_2.DOC                                    -1-
REPLY TO PLAINTIFF BUCKLEY H. CRISPIN'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FIRST AMENDED COMPLAINT

1  contract terms were not.  That is insufficient to support a claim on a contract.

2      Third, Plaintiff fails to allege facts sufficient to support a claim for breach of

3  the implied covenant of good faith and fair dealing.  Plaintiff cannot allege a

4  special, fiduciary relationship between the parties to support a claim for tort

5  recovery.  The tort claim is not available to parties of an ordinary commercial

6  transaction.  In the absence of a special relationship, Plaintiff's claim is duplicative

7  of its breach of contract claim and therefore may be dismissed as superfluous.

8      Finally, Plaintiff's complaint is utterly devoid of allegations that would

9  support claims against Nervous Tattoo, Inc. ("Nervous Tattoo") or Shop on Stage,

10  Inc. ("Shop on Stage").  With 18 separate defendants in this action, Plaintiff must

11  do more to clearly link which allegations are being asserted against which

12  defendants.  Lumping together all 18 defendants does not comply with Rule 8

13  pleading standards.  Plaintiff's claims against these defendants should be dismissed.

14      Though the pleading at issue here is Plaintiff's First Amended Complaint,

15  this is the first time any court will examine the sufficiency of any complaint in this

16  action.  Although Defendants previously moved to dismiss Plaintiff's original

17  complaint, Plaintiff voluntarily amended that pleading before Defendants' motion

18  was heard.  Despite those amendments (which largely consisted of adding new

19  defendants to the action), Plaintiff's pleading is still woefully deficient.

20  **II.  STATEMENT OF FACTS**

21      Christian Audigier is a world famous clothing and accessories designer.  He

22  has been responsible for numerous fashion trends, including, most recently, the

23  exploding popularity of clothing and accessories featuring tattoo-style art.  Through

24  defendant Nervous Tattoo, Inc., Mr. Audigier popularized the "Ed Hardy" brand,

25  which is known for its colorful collages of tattoo-style art by tattoo artist Don Ed

26  Hardy and appears on all nature of products from clothing to accessories to jewelry

27  to wine.

28      In the mid-2000's, through Christian Audigier, Inc., the "Christian Audigier"

247587_2.DOC  -2-

1    brand was launched.  Clothing and accessories sold under that brand prominently

2    feature the Christian Audigier name and sometimes utilize tattoo-style art by artists

3    contracted to create art for those products.  As a result of Mr. Audigier's design

4    sensibilities, as well as Defendants' substantial marketing and promotion efforts,

5    the Christian Audigier brand has become a well-known lifestyle brand.

6         Plaintiff Buckley Crispin is one of numerous tattoo artists who sold tattoo-

7    style art to Defendants for use in connection with Christian Audigier-branded

8    clothing, accessories and products.  Plaintiff was introduced to the defendants in

9    late 2005 by another tattoo artist who was then also supplying artwork to

10   Defendants.  Between November 2005 and January 2006, Plaintiff prepared

11   approximately 15 tattoo-style drawings for the Defendants, and was paid for each of

12   them the price agreed upon by the parties.  First Amended Complaint ("FAC") ¶ 26.

13   There was no further contact between Plaintiff and Defendants from 2006 until late

14   2009.

15        Having seen the broad appeal of the Christian Audigier brand and believing it

16   presented an opportunity for him, Plaintiff filed this suit in an effort to extort

17   additional sums for the drawings he sold nearly 5 years ago.  Indeed, based upon 15

18   drawings he sold in 2005 and 2006, Plaintiff claims he is entitled to share in the

19   "hundreds of millions" of dollars Defendants have purportedly earned through their

20   sales of clothing, accessories and other products.  *Id.* ¶ 32.

21        Plaintiff attempts to assert two categories of claims against the defendants:

22   (1) breach of contract, and (2) copyright infringement.  He has succeeded in

23   asserting neither.

24        With respect to his contract causes of action, Plaintiff alleges that, in 2005 or

25   2006, when he sold his artwork to the Defendants, he obtained an oral contract

26   regarding how that artwork would be used.  In particular, Plaintiff alleges that the

27   Defendants agreed to display Plaintiff's "seal" whenever any of the artwork he

28   prepared was used in connection with Defendants' goods.  *Id.* ¶ 28.  According to

1   Plaintiff, Defendants have breached that agreement by including his seal with only
2   some of the artwork he prepared.  *Id.* ¶¶ 29, 30.  On these contract claims, Plaintiff
3   seeks to collect damages for the loss of publicity and name recognition he was
4   supposedly to receive from the use of his "seal" in connection with Christian
5   Audigier branded clothing and accessories.  *Id.* ¶¶ 39, 45.

6        Plaintiff attempts to state a copyright infringement claim based upon his
7   assertion that, when Defendants' paid him for the artwork, he granted to them only
8   a limited license.  According to Plaintiff, that license permits CAI and certain other
9   defendants themselves to sell garments bearing the 15 drawings, but does not
10  permit them to license others to do so.  *Id.* ¶¶ 42, 54.  On the basis of this claim,
11  Plaintiff claims he is entitled to share of the profits Defendants have earned through
12  their sales of clothing, accessories and other products.  *Id.* ¶ 32.

13  **III.   ARGUMENT**

14       A.   **Plaintiff Fails to State a Claim for Copyright Infringement, And**
15            **As A Result Has Not Created Federal Question Jurisdiction.**

16       As set forth in Defendants' Motion to Dismiss, Plaintiff's purported
17  copyright infringement allegations present questions arising under state contract
18  law rather than questions arising under the Copyright Act.  Plaintiff responds in his
19  Opposition that Defendants infringed Plaintiff's copyright by (1) "reproducing
20  those artworks outside of the permitted scope of the License;" and by (2) sub-
21  licensing the Artwork.  *See* Plaintiff Buckley H. Crispin's Opposition to
22  Defendants' Motion to Dismiss First Amended Complaint ("Opposition"), p. 5:6-9.
23  However, Plaintiff's response only confirms that the claims he is asserting arise
24  under state contract law, not federal copyright law, and, therefore do not confer
25  federal question jurisdiction.  Accordingly, this action should be dismissed pursuant
26  to Rule 12(b)(1), for lack of subject matter jurisdiction.

27       Furthermore, Plaintiff fails to allege the acts and timeframe of Defendants'
28  purported infringement necessary to state a claim for copyright infringement.

247587_2.DOC                             -4-

1  Therefore, Plaintiff's copyright infringement claim should be dismissed under Rule

2  12(b)(6), for failure to state a claim.

3         **1.**      **Plaintiff has not alleged a claim arising under the Copyright**

4                **Act.**

5        Plaintiff's First Amended Complaint does not allege the facts necessary to

6  state a claim for copyright infringement.  Plaintiff's allegations that "he is the

7  creator and sole copyright owner of the fifteen individual works of art that have

8  been duly registered" and that "Defendants have reproduced those artworks in

9  violation of his rights under the Copyright Act" (*See* Opposition p. 4:26-5:2) are not

10  enough to state a copyright infringement claim.  A properly pled copyright

11  infringement claim must allege 1) which specific original works are the subject of

12  the copyright claim, 2) that plaintiff owns the copyrights in those works, 3) that the

13  copyrights have been registered in accordance with the statute, and 4) by what acts

14  during what time the defendant infringed the copyright.  *Gee v. CBS, Inc.*, 471 F.

15  Supp. 600, 643 (E.D. Pa. 1979), *aff'd*, 612 F.2d 572 (3rd Cir. 1979); *Kelly v. L.L.*

16  *Cool J.*, 145 F.R.D. 32, 36 (S.D. N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994).  As

17  an initial matter, Plaintiff's copyright claim is deficient because Plaintiff fails to

18  allege the acts and timeframe of Defendants' supposed infringement.  *See* Section

19  III.A.4, *infra*; *see also* Defendants' Motion to Dismiss, section IV.B.

20        Furthermore, Plaintiff's allegations that "Defendants infringed Crispin's

21  copyrights by reproducing those artworks outside the permitted scope of the

22  License, and also by sub-licensing those artworks to other parties without Crispin's

23  authorization" fail to present a question arising under the Copyright Act.  *See*

24  Opposition p. 5:7-8.  It is well established that federal courts do not automatically

25  have jurisdiction over an action merely because it involves a copyright or contract

26  for a copyright.  *Scholastic Entm't, Inc. v. Fox Entm't Group, Inc.*, 336 F.3d 982,

27  986 (9th Cir. 2003); *Topolos v. Caldeway*, 698 F.2d 991, 993 (9th Cir. 1983).

28        The Ninth Circuit follows the majority rule as outlined in *T.B. Harms  Co. v.*

1   *Eliscu*, 339 F. 2d 823 (2d Cir.1964) , that the district court may exercise jurisdiction

2   if:  (1) the complaint asks for a remedy expressly granted by the Copyright Act; (2)

3   the complaint requires an interpretation of the Copyright Act; or (3) federal

4   principles should control the claims.  *Scholastic Entm't, Inc. v. Fox Entm't Group,*

5   *Inc.*, 336 F.3d at 986; *T.B. Harms  Co. v. Eliscu*, 339 F. 2d at 827 (finding that the

6   test was not satisfied and the district court was correct to dismiss the claims).  The

7   test outlined in *T.B. Harms* is essentially a reiteration of the "well-pleaded

8   complaint" rule that federal jurisdiction exists only when a federal question is

9   presented on the face of a properly pleaded complaint.  *See, e.g.*, *Scholastic Entm't,*

10   *Inc. v. Fox Entm't Group, Inc.*, 336 F.3d at 986; *ARCO Envtl. Remediation, L.L.C.*

11   *v. Dept. of Health and Envtl. Quality of the State of Montana*, 213 F.3d 1108, 1113

12   (9th Cir. 2000).

13       Here, Plaintiff's allegations fail to present a federal question "on the face of a

14   properly pleaded complaint."  Instead, Plaintiff's allegations revolve around the

15   parties' dispute over the terms of their oral agreement and whether Defendants have

16   breached those disputed terms.  Disputes over the terms of a copyright license raise

17   questions of state contract law, rather than copyright law.  *Saturday Evening Post*

18   *Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1194 (7th Cir. 1987);  *Foad*

19   *Consulting Group, Inc. v. Azzalino*, 270 F.3d 821, 827 (9th Cir. 2001) ("Congress

20   did not choose to regulate the conditions under which a copyright holder can grant a

21   nonexclusive copyright license to another.  Thus, so long as it does not conflict with

22   the Copyright Act, state law determines whether a copyright holder has granted

23   such a license."); *Franklin v. Cannon Films, Inc.*, 654 F. Supp. 133, 135 (C.D. Cal.

24   1987) (federal court was without jurisdiction in dispute involving whether plaintiffs

25   gained ownership of copyrights and whether defendants improperly transferred

26   those copyrights, which required interpreting the contract rather than examining the

27   works for copyright infringement).  Thus, where resolution of the dispute involves

28   contract interpretation, rather than comparison or construction of the copyrighted

1   work, there is no need to interpret the Copyright Act and, consequently, no federal

2   question jurisdiction.

3          Here, Plaintiff attempts to frame his allegations as giving rise to copyright

4   issues, by giving the illusion that they raise questions of whether Defendants have

5   "exceeded the scope of the License."  To this end, Plaintiff relies on cases in which

6   the (former) licensees clearly "exceeded the scope" of a written license, primarily

7   because they exceeded the ***duration*** of the license.  These cases clearly arise under

8   copyright law, because ***no license was in place at the time of infringement***.  *See,*

9   *e.g.*, *Harrell v. Van Der Plas*, 2009 U.S. Dist. LEXIS 104828 (S.D.N.Y. Nov. 9.

10  2009) (copyright infringement claim found where defendants published a "new"

11  addition of a book ***two years after the expiration of their license*** to publish the old

12  edition of the book); *Eastern Broadcasting Am. Corp. v. Universal Video, Inc.* No.

13  04 Civ. 5654 2006 U.S. Dist. LEXIS 17032, 2006 WL 767871, at *2 (E.D.N.Y.

14  Mar. 24, 2006) (claim arose under copyright law because there was ***no licensing***

15  ***agreement in effect*** at the time of alleged infringement); *LGS Architects, Inc. v.*

16  *Concordia Homes of Nevada*, 434 F.3d 1150 (9th Cir. 2006) (where license allowed

17  use of architectural plans for construction of  the "Arbor Glen I" housing

18  development, later unauthorized use of architectural plans for "Arbor Glen II"

19  exceeded the scope of the limited license).  Plaintiff also relies on cases in which

20  the licensee breached the license in a manner resulted in its automatic termination

21  or in a manner that permitted the copyright holder to repudiate the contract granting

22  the license, thereby eliminating any contractual privity and making the defendant a

23  "stranger" to the copyright holder.  *See, e.g.*, *Marshall v. New Kids on the Block*

24  *Partnership*, 780 F. Supp. 1005, 1008 (S.D.N.Y. 1991) ("If the Complaint discloses

25  the elements necessary for a copyright infringement claim, the plaintiff's reference

26  to a contractual license granted to the defendant only by way of anticipatory

27  repudiation … does not turn a copyright claim into one for breach of contract.")

28  Here, Plaintiff ***concedes*** Defendants' present rights to the artwork at issue (*e.g.*,

247587_2.DOC                                    -7-

1   FAC ¶26), but merely disputes the extent of the rights granted by the parties'

2   contract. That states a claim in state contract law, not a federal case under the

3   Copyright Act. *Franklin v. Cannon Films, Inc.*, 654 F. Supp. 133, 135 (C.D. Cal.

4   1987); *Huebbe v. Oklahoma Casting Co.*, 663 F. Supp. 2d 1196, 1209 (W.D. Okla.

5   2009) (which rights are granted by a licensing agreement is to be determined by

6   reference to state contract law).

7       Plaintiff's reliance on *Sun Microsystems Inc. v. Microsoft Corp.*, 188 F.3d

8   1115 (9th Cir. 2003) is misplaced.[1] This case is inapposite as it arose in the

9   preliminary injunction context, requiring the court to assess whether the case arose

10  under copyright law for the purpose of resolving whether the copyright

11  presumption of irreparable harm applied. Furthermore, this case **did not** hold that

12  the licensee "exceeded the scope" of the license for the purpose of determining

13  whether the claim was a federal question arising under the Copyright Act. *See id.* at

14  1122. Instead, the court **remanded** the case, noting that whether the case arose

15  under copyright or contract law rested on whether the disputed terms constituted

16  **contractual covenants** or **license restrictions**. *Id.* The court further stated that

17  "determination of whether the compatibility terms in the [License] are covenants or

18  limitations on the scope of the license is likewise a contractual issue, for it requires

19  us to construe the license." *Id.*

20      Plaintiff's reliance on *Vestron v. Home Box Office*, 839 F.2d 1380 (9th Cir.

21  1988), is similarly misplaced. In *Vestron*, there was no contract dispute between

22  the parties because no contractual relationship existed between the plaintiff and the

23  defendant. 839 F.2d at 1380-81. The plaintiff in *Vestron* was involved in a dispute

24  over contractual rights to the copyright, but that dispute was between the plaintiff

25  _____

26  [1] Plaintiff's reliance on *Jacobson v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008) is also
    misguided. In *Jacobson*, while finding that the licensee in an Open Source Code

27  context exceeded the scope of a license for failure to give copyright attribution, the
    court **expressly** acknowledged that the open source context is distinguishable from

28  author attribution cases, where the right to copyright credit does **not** arise under
    copyright law. *Id.* at 1382, n. 5.

REPLY TO PLAINTIFF BUCKLEY H. CRISPIN'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FIRST AMENDED COMPLAINT

1   and the copyright owner and (tellingly) was pending in state court.  *Id.* at 1381.

2   Because of this lack of contractual privity, the only possible basis for the dispute

3   between the parties in the federal court action in *Vestron* was the Copyright Act.  In

4   contrast, in this case, Plaintiff and Defendants do have a contractual relationship

5   and, fundamentally, Plaintiff's complaint is that Defendants breached their rights

6   under the contract.

7       Here, the real issues arising from Plaintiff's allegations are merely disputes

8   over the License:  (1) whether the License's terms included a term about the seal;

9   and (2) whether the License's terms permitted sub-licensing.  Neither of these

10   issues arises under the Copyright Act.  They are not questions requiring comparison

11   or construction of the copyrighted work or examining the works for copyright

12   infringement.  *See Franklin*, 654 F. Supp. at 135; see also Sections III.A.2 and 3,

13   *infra*.  The allegations merely raise disputes over the operation of and terms of the

14   License.  As such, the copyright allegations raise nothing more than questions

15   arising under contract law and do not confer federal question jurisdiction.

16          **2.      Any alleged requirement that Defendants display Plaintiff's**

17                **"seal" arises out of contract law not copyright law.**

18       Plaintiff's argument that Defendants' failure to display Plaintiff's seal

19   exceeded the scope of the oral license is also insufficient to create a claim for

20   copyright infringement.

21       It is well settled that there is no right to authorship attribution under the

22   Copyright Act.  *UMG Recordings, Inc. v. Disco Azteca Distrib., Inc.*, 446 F. Supp.

23   2d 1164, 1178 (E.D. Cal. 2006) ("[I]t is well established that the right to attribution

24   is not a protected right under the Copyright Act."); *Wolfe v. United Artists Corp.*,

25   583 F. Supp. 52, 56 (E.D. Pa. 1983) ("whatever obligations defendants may have

26   had to plaintiff . . . concerning . . . copyright notices [of authorship], those

27   obligations were the subject of the various contractual agreements between them.

28   A determination as to whether or not defendants breached any such obligations …

1    can only be made by reference to these agreements, not to the copyright law."). To

2    the extent that there was *any* requirement to display Plaintiff's seal, this

3    requirement would have to arise under contract law, because failure to give proper

4    authorship credit does not give rise to a Copyright Act claim. *Jacobson v. Katzer*,

5    535 F.3d at 1382, n. 5 ("Copyright law does not automatically protect the rights of

6    authors to credit for copyrighted materials. Whether such rights are protected by a

7    specific license grant depends on the language of the license.") (citations omitted).

8    *Stepdesign, Inc. v. Research Media, Inc.*, 442 F. Supp. 32, 33 (S.D.N.Y. 1977)

9    (dismissing for lack of subject matter jurisdiction, concluding "that basically this is

10   an action for breach of contract").

11          Plaintiff's attempt to apply *Sun Microsystems* to this issue is misplaced. That

12   action had nothing to do with authorship attribution. In *Sun Microsystems*, the

13   Ninth Circuit held that violation of a ***limitation*** on the scope of license gives rise to

14   a copyright claim while violation of a ***covenant*** gives rise to a contract claim. *Sun*

15   *Microsystems*, 188 F. 3d at 1119. Here, the alleged requirement to display

16   Plaintiff's seal cannot be anything other than a contractual covenant, because there

17   is no right to authorship attribution under the Copyright Act. Plaintiff does not cite

18   a single case to support his argument that failure to attribute authorship can be a

19   limitation or condition on the scope of the license.[2] The weight of the case law is

---

20   [2] None of Plaintiff's cases address whether authorship attribution is a contractual
     covenant or limitation on scope: *Sun Microsystems* analyzed whether a license
21   requirement, that the software Defendant developed using Plaintiff's copyrighted
     software had to be compatible with other software, was a condition or covenant.
22   188 F.3d at 1117. In *Netbula, LLC v. Storage Tech. Corp.*, 2008 U.S. Dist. LEXIS
     4119 (N.D. Cal. Jan 17, 2008), the court addressed whether exceeding the number
23   of users allowed under the License and using the software on an unauthorized
     operating system breached a covenant or condition. In *LGS Architects, Inc. v.*
24   *Concordia Homes of Nevada*, 434 F.3d 1150 (9th Cir. 2006), the issue was whether
     use of architectural plans on a development project exceeded the scope of a license
25   granting use on a prior development project. In *MDY Indus, LLC v. Blizzard*
     *Entm't, Inc.*, 2008 U.S. Dist. LEXIS 53988 (D. Ariz. July 14, 2008), the court
26   addressed whether licensed users of an online gaming software exceeded the scope
     of the license by using a third-party software to play the game for them. *Pahl v.*
27   *Commissioner*, 150 F.3d 1124, 1131 (9th Cir. 1998) is not even a copyright case; it
     addresses whether there are conditions precedent in an oral contract to purchase
28   shares of a firm. Finally, *Kipperman v. Dixson* (In re Diego's Inc.), 88 F.3d 775

247587_2.DOC                                  -10-

clear:  only a contract can confer such a right.  Thus, Plaintiff's allegations that
Defendants failed to display Plaintiff's seal does not state a claim for copyright
infringement and cannot confer federal jurisdiction over this action.

### 3. Unauthorized sub-licensing does not create a claim for copyright infringement.

Nor do Plaintiff's allegations that Defendants sublicensed the artwork to
other defendants create a cause of action under the Copyright Act.  At most, that
aspect of Plaintiff's claim raises issues that must be resolved by reference to state
contract law and, therefore, do not create federal jurisdiction.

Plaintiff argues that federal jurisdiction over this case exists because of his
allegations that Defendants sub-licensed the Artwork without authorization.
However, that allegation fundamentally raises an issue of contract interpretation,
not copyright law.

The law is clear that the non-exclusive oral license Plaintiff claims to have
granted to Defendants *could* include the right to sub-license. [3]  *See, e.g., Latimer v.
Roaring Toyz, Inc.*, __F.3d __, 2010 WL 1253090 (11th Cir. 2010) (implied
licensee entitled to authorize others to copy and reproduce licensed work);
*Lulirama Ltd., Inc. v. Access Broadcast Svcs., Inc.*, 128 F.3d 872, 882 (5th Cir.
1997) (nonexclusive license was created due to absence of effective written transfer
agreement; but nonexclusive licensee obtained rights to reproduce work, prepare
derivative works, distribute copies of work itself and permit others to use work);
*Foad Consulting*, 270 F.3d at 826 (implied nonexclusive license included right to
create derivative works). [4]  Whether the License **did or did not** confer upon

(9th Cir. 1996), also not a copyright case, addresses an oral agreement to purchase a
restaurant.
[3] Plaintiff's citation to *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989),
which stands only for the proposition that the Copyright Act controls issues of
contract construction when state contract law interferes with federal copyright law,
is therefore irrelevant.  Since the law is clear that the Copyright Act does not bar a
copyright owner from granting an implied license that includes the right to
sublicense, the decision in *S.O.S., Inc.* is irrelevant to the issues here.
[4] *Harris v. Emus Records Corp.*, 734 F.2d 1329 (9th Cir. 1984), cited by Plaintiff, is

REPLY TO PLAINTIFF BUCKLEY H. CRISPIN'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FIRST AMENDED COMPLAINT

1   Defendants the right to sublicense depends upon the terms of the oral contract.

2   That will necessarily be resolved entirely under California contract law. *Id.* at 827

3   (holding that whether implied license was granted and scope of that license must be

4   resolved by reference to California contract law).  Because state contract law, not

5   the Copyright Act, will form the basis for decision, Plaintiff's sub-licensing

6   allegations do not confer federal question jurisdiction. *Franklin*, 654 F. Supp. at

7   135 (federal court lacked jurisdiction over dispute involving whether plaintiffs

8   gained ownership of copyrights and whether defendants improperly transferred

9   those copyrights, which required interpreting the contract rather than examining the

10   works for copyright infringement).

11        Plaintiff's sublicensing allegations also do not create federal jurisdiction over

12   this action because they are insufficient to support a copyright cause of action.  The

13   law is clear that the mere ***act*** of unauthorized sublicensing of copyrighted works

14   does ***not*** constitute infringement under the Copyright Act. *See, e.g.*, *Subafilms,*

15   *Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1094 (9th Cir. 1994) ("we do not

16   think Congress intended to hold a party liable for merely 'authorizing' conduct that,

17   had the authorizing party chosen to engage in itself, would have resulted in no

18   liability under the Act."); *Venegas-Hernandez v. Asociacion De Compositores,*

19   *Editores De Musica Latinoamericana.*, 424 F.3d 50, 57-58 (1st Cir. 2005); *Resnick*

20   *v. Copyright Clearance Ctr., Inc.*, 422 F. Supp. 2d 252, 255 (D. Mass. 2006).

21        For both of these reasons, Plaintiff's allegations regarding Defendants' grants

22   of sub-licenses to others are insufficient to create federal jurisdiction over this

23   action and are insufficient to state a claim.

24   not to the contrary.  That case merely held that a copyright licensee may not

25   ***transfer*** (by means other than a sub-license) its license to a third party without the
     consent of the copyright holder.  Indeed, the precise issue there was whether a
     recording company that purchased the master recording of a musical album from

26   the bankruptcy estate of the former owner of that master recording thereby also
     automatically purchased the license to reproduce that recording that was also held

27   by the former owner. *Id.* at 1334.  The case did not involve sub-licensing and
     makes no pronouncement regarding whether an implied licensee may grant

28   sublicenses while still holding its own license.

247587_2.DOC

1
2

### 4.     Plaintiff fails to plead how or when Defendants infringed his copyrights.

3      Even if Plaintiff's claims did arise under copyright, rather than state contract

4   law, his claims still would be deficient because Plaintiff fails to allege the acts and

5   timeframe of Defendants' supposed infringement.  *See Gee v. CBS, Inc.*, 471 F.

6   Supp. 600, 643 (E.D. Pa. 1979), *aff'd*, 612 F.2d 572 (3rd Cir. 1979); *Kelly v. L.L.*

7   *Cool J.*, 145 F.R.D. 32, 36 (S.D. N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994).  A

8   "properly plead [sic] copyright infringement claim must allege ... by what acts

9   during what time the defendant infringed the copyright."  *Marvullo v. Gruner &*

10   *Jahr*, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000) (citing *Kelly v. L.L. Cool J.*, 145

11   F.R.D. 32, 36 (S.D.N.Y. 1992)).  It must set out the "particular infringing acts ...

12   with some specificity.  Broad, sweeping allegations of infringement do not comply

13   with Rule 8."  *Marvullo*, 105 F. Supp. 2d at 230 (citing *Kelly*, 145 F.R.D. at 36 n. 3

14   (citation omitted)).  "A complaint which consists of conclusory allegations

15   unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."

16   *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996); *see also Bell*

17   *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), (requiring "more than labels and

18   conclusions, and a formulaic recitation of the elements of a cause of action" to

19   survive a 12(b)(6) motion to dismiss).

20      Here Plaintiff's allegations amount to nothing more than the "broad sweeping

21   allegations of infringement" that were insufficient to state a claim in *Marvullo*.

22   Plaintiff claims that seventeen separate Defendant companies, and Christian

23   Audigier as an individual, all violated his copyrights.  However, despite the

24   potentially extensive infringement that the sheer number of Defendants in this

25   action might suggest, Plaintiff has not alleged a ***single*** infringing act by ***any***

26   Defendant.  Nor does the Plaintiff allege the time frame in which the infringing

27   actions allegedly occurred.  Thus, Plaintiff fails to state a cause of action for

28   copyright infringement, and this Court should dismiss Plaintiff's copyright

247587_2.DOC                                    -13-

1  infringement claim.

2     **B.**  <u>**Plaintiff Fails to State a Claim for Breach of Contract.**</u>

3     Plaintiff's breach of contract claim fails because Plaintiff did not plead the

4  essential terms of the License.  "Under the federal rules, a 'plaintiff may set forth

5  the contract verbatim in the complaint or plead it, as indicated, by exhibit, or plead

6  it according to its legal effect.'"  *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F.

7  Supp. 2d 1094, 1102 (E.D. Cal. 2010) (citing Fed.R.Civ.P. Official Form 3, 12); *N.*

8  *County Commc'ns Corp. v. Verizon Global Networks, Inc.*, 685 F. Supp. 2d 1112,

9  1122 (S.D. Cal. 2010).  To plead the legal effect of a contract, the plaintiff must

10  allege the substance of its relevant terms.  *Parrish v. National Football League*

11  *Players Ass'n*, 534 F. Supp. 2d 1081, 1094 (N.D. Cal. 2007). "This is more difficult

12  than pleading the precise language, for it requires . . . comprehensiveness in

13  statement, and avoidance of legal conclusions."  *Id.* (internal citations omitted); *In*

14  *re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1220 (N.D. Cal. 2007)

15  (dismissing contract claim in part for failure to plead essential terms of contract);

16  *Rommel v. Laffey*, 194 F.R.D. 441, 444 (N.D.N.Y. 2000) (dismissal of contract

17  claim for "failure to allege in nonconclusory language the essential terms of the

18  parties' purported contract").

19     Contrary to Plaintiff's assertion, Defendants did not simply ignore

20  paragraphs 1-39 of the FAC in assessing the deficiencies of Plaintiff's breach of

21  contract claim.  In fact, none of these paragraphs include essential allegations with

22  regard to the License's terms, such as ***pricing***, ***duration***, ***description***, ***timing of***

23  ***purchases***, ***quantity of artwork***, ***the scope of rights being licensed***, ***the duration of***

24  ***these rights***, or ***the conditions under which rights were conferred***, or other absent

25  but essential terms of the contract.  *See, e.g.*, *W. Emulsions, Inc. v. BASF Corp.*, No.

26  CV 05-5246 CBM (SSx), 2006 WL 4599673, *1 (C.D. Cal. Apr. 28, 2006) (failure

27  to state a claim without allegations of the contract's price, quantity, time for

28  performance or the contract's alleged duration).  In fact, in paragraphs 1-39 of the

247587_2.DOC    -14-

1   FAC, Plaintiff prefers to focus on what rights allegedly weren't included (e.g.

2   sublicensing) in the License, without providing allegations about which rights were

3   included.  These failings in Plaintiff's contract claim render it insufficient as a

4   matter of law.  Plaintiff's claim for breach of contract should be dismissed for

5   failure to state a claim under Rule 12(b)(6).

6         C.      **Plaintiff Fails to State a Claim for Breach of the Implied Covenant**

7              **of Good Faith and Fair Dealing.**

8         While it is true that every contract imposes a duty of good faith and fair

9   dealing, Plaintiff has not alleged any facts to support a breach of the implied

10  covenant claim that are separate from his breach of contract claim.  Every contract

11  contains an implied covenant of good faith and fair dealing that "neither party will

12  do anything which will injure the right of the other to receive the benefits of the

13  agreement.  The covenant is read into contracts in order to protect the express

14  covenants or promises of the contract, not to protect some general public policy

15  interest not directly tied to the contract's purpose."  *Wolf v. Walt Disney Pictures*

16  *and Television*, 162 Cal. App. 4th 1107, 1120 (2008) (citations and quotations

17  omitted).  Importantly, the implied covenant is limited to assuring compliance with

18  the express terms of the contract, and cannot be extended to create obligations not

19  contemplated in the contract.  *Racine & Laramie, Ltd. V. Dept. of Parks and*

20  *Recreation*, 11 Cal. App. 4th 1026, 1032 (1992); *see also Agosta v. Astor*, 120 Cal.

21  App. 4th 596, 606 (2004) ("The covenant cannot impose substantive duties or limits

22  on the contracting parties beyond those incorporated in the specific terms of their

23  agreement.").

24        When a plaintiff's claim for breach of the implied covenant "relies on the

25  same acts, and seeks the same damages" as its breach of contract claim, the cause of

26  action is "duplicative . . . and may be disregarded."  *Bionghi v. Metropolitan Water*

27  *District of Southern California*, 70 Cal. App. 4th 1358, 1370 (1999); *see also*

28  *Tilbury Constructors, Inc. v. State Compensation Ins. Fund*, 137 Cal. App. 4th 466,

247587_2.DOC

-15-

1   474 (2006) (a breach of the implied covenant of good faith and fair dealing must

2   involve something beyond breach of the contractual duty itself); *Careau & Co. v.*

3   *Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1392 (1990) (holding

4   that "plaintiffs' allegations are not sufficient to state any cause of action for a

5   breach of the implied covenant of good faith" because plaintiffs "have not even

6   attempted to plead a basis for a recovery of anything other than ordinary contract

7   damages and their claim is simply duplicative of their two contract causes of action

8   and thus may be disregarded").

9          Similar to *Bionghi* and *Careau*, Plaintiff has not alleged any facts that would

10  distinguish its breach of the implied covenant claim from its breach of contract

11  claim.  Plaintiff refers generally to the "first forty paragraphs" of its FAC but,

12  tellingly, did not point to any distinct facts within those first forty paragraphs (or

13  the thirty-five that follow) that would support a separate claim for breach of the

14  implied covenant.  *See* Opposition, at p. 18:16-19.  Defendants' motion to dismiss

15  this cause of action is well supported under California law and, consequently, is not

16  subject to sanction.

17         Finally, as argued in Defendants' Motion to Dismiss, Plaintiff has not stated,

18  and cannot state, a claim for the tortious breach of the implied covenant.  No

19  special, fiduciary relationship exists between Plaintiff and Defendants that would

20  warrant such a claim.  *See, e.g.*, *Pension Trust Fund for Operating Eng'rs v. Fed.*

21  *Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002) ("Thus, the implied covenant tort is not

22  available to parties of an ordinary commercial transaction where the parties deal at

23  arms' length."); *Careau*, 222 Cal. App. 3d at 1395.  Since Plaintiff's cause of action

24  for breach of the implied covenant does not exist as a separate cause of action

25  outside of a breach of contract claim, and cannot state a claim for tort recovery,

26  Plaintiff's third claim for relief should be dismissed with prejudice.

27

28

REPLY TO PLAINTIFF BUCKLEY H. CRISPIN'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FIRST AMENDED COMPLAINT

**D.     Plaintiff Fails to State a Claim Against Defendants Nervous Tattoo and Shop on Stage.**

Plaintiff's allegations specifically mentioning Nervous Tattoo and Shop on Stage are confined to paragraphs 6, 7, 32 and 34 of the First Amended Complaint. In paragraphs 6 and 7, Plaintiff alleges these defendants' states of incorporation and mailing addresses.  In paragraph 32, Plaintiff alleges that "CAI, NTI and SOS, amongst others, have exploited Crispin's artworks in violation of his rights." Finally, in paragraph 34, Plaintiff alleges that "Audigier and CAI, an/or [sic.] companies they are affiliated with including NTI and SOS, have sublicensed the Artwork to a vast network of licenses."

Plaintiff's allegations do not comply with Rule 8 pleading standards since they do not identify *what* Nervous Tattoo and Shop on Stage purportedly did to exploit the Artwork .  Did these defendants sell goods bearing the Artwork without authorization?  Did they aid and abet others to do so?  Did any of the entities to whom Nervous Tattoo and Shop on Stage purportedly sub-licensed the artwork actually make or sell any infringing goods, and, if so, which infringing goods?  *See, e.g.*, *Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 251 (S.D.N.Y. 2009); *Stewart v. Mortgage Elec. Registration Sys., Inc.*, No. CV. 09-688-PK, 2010 WL 1054384, *7 (D. Or. Feb. 18, 2010) (Plaintiff "fails to make any substantive allegations concerning the particular conduct of the defendants.  Most importantly, [plaintiff] still fails to clearly link which allegations are being asserted against which defendants.  As such, the complaint violates Rule 8, and should be dismissed").  Accordingly, the FAC does not comply with Rule 8, with respect to either Defendant, and all claims against them should be dismissed.

///

///

///

///

247587_2.DOC

-17-

1   **IV.   <u>CONCLUSION</u>**

2          For the foregoing reasons and for those set forth in the motion itself, this

3   Court should dismiss Plaintiff's First Amended Complaint with prejudice.

4

5

6   Dated:  June 7, 2010                    BROWNE WOODS GEORGE LLP
                                            Michael A. Bowse
7                                           Amanda L Morgan

8
                                            By:___/s/ Michael A. Bowse_____
9                                                Michael A. Bowse
                                                 mbowse@bwgfirm.com
10
                                            Attorneys for Defendants CHRISTIAN
11                                          AUDIGIER, INC.; NERVOUS TATTOO, INC.,
                                            SHOP ON STAGE, INC., and
12                                          CHRISTIAN AUDIGIER

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

247587_2.DOC                          -18-

## **PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 2121 Avenue of the Stars, Suite 2400, Los Angeles, California 90067.

      On June 7, 2010, I served the foregoing document described as:  **REPLY TO PLAINTIFF BUCKLEY H. CRISPIN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** on the parties in this action by serving:

See attached Service List.

☐    **By Envelope** - by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as above and delivering such envelopes:

☐    **By Mail:**  As follows:  I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Beverly Hills, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐    **By Personal Service:**  I caused to be delivered such envelope by hand to the offices of the addressee(s).

☐    **By Overnite Express:**  I caused the envelope(s) to be deposited in the dropbox for  Overnite Express office located at 2121 Avenue of the Stars, Los Angeles, California 90067, on _____, for delivery on the next-business-day basis to the offices of the addressee(s).

☒    **CM/ECF Electronic Filing**: I caused the above document(s) to be transmitted to the office( s) of the addressee( s) listed above by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(l). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

      Executed on June 7, 2010, at Los Angeles, California.

☒    **FEDERAL**  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

                         /s/ Joy Bowman
                         Joy Bowman

REPLY TO PLAINTIFF BUCKLEY H. CRISPIN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1
## SERVICE LIST

2

3 *Attorneys for Plaintiff*:

4 Stephen M. Doniger, Esq.
Scott A. Burroughs, Esq.
5 DONIGER / BURROUGHS APC
300 Corporate Pointe, Suite 355
6 Culver City, California 90230
Tel 310.590.1820 -- Fax 310.417.3538
7 Email:   stephen@donigerlawfirm.com;
scott@donigerlawfirm.com
8

9 *Attorneys for Defendants 3A Watch, LLC,*
*Radiance Jewelry, Inc., Chromebones,*
10 *Revolution Eyewear, Inc., JR93, Inc., New*
*Wage Fragrances, Tattoo Air Fresh Inc.:*
11
12 John M. Moscarino, Esq.
Joseph Connolly, Esq.
MOSCARINO & CONNOLLY LLP
13 11911 San Vicente Boulevard, Suite 324
Los Angeles, California 90049-6616
14 Tel 310.471.4500 – Fax 310.471.4558
Email:   connollyjose@yahoo.com
15

16

17

18

19

20

21

22

23

24

25

26

27

28